```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS
```

KATHY SUE MONTGOMERY,

        Plaintiff,

vs.                                   Case No. 15-1275-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On October 31, 2014, administrative law judge (ALJ) Susan W. Conyers issued her decision (R. at 28-40). Plaintiff alleges that she had been disabled since September 3, 2012 (R. at 57).[1] Plaintiff meets the insured status requirements for social

---

[1] The ALJ decision states that plaintiff alleged disability beginning January 1, 2012 (R. at 28). However, at the hearing, plaintiff indicated that they were amending the onset date to September 3, 2012 (R. at 57, 59).

security disability benefits through March 31, 2017 (R. at 30). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since January 1, 2012 (R. at 30). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 30). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 31). After determining plaintiff's RFC (R. at 33), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 38). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 38-39). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 39).

**III. Did the ALJ err by not finding that plaintiff's impairments met or equaled listed impairment 1.04A or 1.04C?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "all" of the criteria of the listed impairment. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

In his brief, plaintiff argues that his impairments meet or equal listed impairments 1.04A or 1.04C (Doc. 13 at 11-14). Those impairments are as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or...
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2015 at 464).

> Inability to ambulate effectively is defined as follows:
>
> 1.00B2b. What We Mean by Inability to Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity

6

> functioning (see 1.00J) to permit
> independent ambulation without the use of a
> hand-held assistive device(s) that limits
> the functioning of both upper extremities...
>
> (2) To ambulate effectively, individuals
> must be capable of sustaining a reasonable
> walking pace over a sufficient distance to
> be able to carry out activities of daily
> living. They must have the ability to travel
> without companion assistance to and from a
> place of employment or school. Therefore,
> examples of ineffective ambulation include,
> but are not limited to, the inability to
> walk without the use of a walker, two
> crutches or two canes, the inability to walk
> a block at a reasonable pace on rough or
> uneven surfaces, the inability to use
> standard public transportation, the
> inability to carry out routine ambulatory
> activities, such as shopping and banking,
> and the inability to climb a few steps at a
> reasonable pace with the use of a single
> hand rail. The ability to walk independently
> about one's home without the use of
> assistive devices does not, in and of
> itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2015 at 459).

In her decision, the ALJ did not discuss listed impairment 1.04A or 1.04C. However, plaintiff has presented no evidence that plaintiff's impairments meet or equal listed impairment 1.04A or 1.04C.[2] There is no medical opinion evidence in the record that either listed impairment is met or equaled, and

---

[2] The court would also note that disability is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a). If a claimant has a severe impairment, then the question is asked–-does that impairment meet or equal a listed impairment. If so, and if it has lasted or can be expected to last for at least 12 months, the person is considered disabled and there is no need to proceed further. Kemp v. Bowen, 816 F.2d 1469, 1474 (10th Cir. 1987). Thus, plaintiff must present evidence that plaintiff meets or equals a listed impairment for a continuous period of not less than 12 months.

there is no evidence in the record establishing that either listed impairment is met or equaled for a continuous period of not less than 12 months.  Plaintiff has the burden to present evidence establishing that her impairments meet or equal a listed impairment.  In light of the absence of the presentation of any evidence by the plaintiff that <u>each</u> of the criteria of either 1.04A or 1.04C is met or equaled in this case, the court finds that the ALJ did not err by failing to specifically discuss listed impairment 1.04A or 1.04C.[3]

Plaintiff also alleges error by the ALJ in failing to consider plaintiff's obesity in terms of whether she met or equaled a listed impairment.  The ALJ did discuss plaintiff's obesity, but noted that she had not complained of any specific functional limitations arising from her obesity.  The ALJ concluded that plaintiff's obesity was not a severe impairment (R. at 31).  Plaintiff again presents no evidence that plaintiff's obesity resulted in plaintiff meeting or equaling listed impairment 1.04A and 1.04C.  In fact, Dr. Morgan, who opined on May 8, 2015 (over 6 months after the ALJ decision)

---

[3] Plaintiff, in her brief, referenced reports from Dr. Morgan dated May 8, 2015 (R. at 8-10), and a consultation note from Dr. Landers, dated April 2, 2015 (R. at 11-13) to support her assertion that her impairments met or equaled listed impairment 1.04A or 1.04C (Doc. 13 at 12).  However, both reports were prepared well after the ALJ decision of  October 31, 2014, and neither report indicates that the findings in those report relate back to a period on or before October 31, 2014.  The Appeals Council found that these reports contain information about a later time, after the ALJ decision (R. at 2), and plaintiff does not contest that finding.  Furthermore, neither report clearly addresses all of the criteria for 1.04A or 1.04C, and plaintiff has the burden of proving that all of the criteria of the listed impairment are met or equaled.  Furthermore, the record shows that Dr. Lothes had indicated on February 11, 2014 that plaintiff had completely healed from her surgery, and later indicated that she could return to work on March 3, 2014 without restriction (R. at 761, 759-760).  Plaintiff does not offer any evidence that indicates that plaintiff's impairments met or equaled a listed impairment on or before the ALJ decision of October 31, 2014.

8

that plaintiff was unable to work, never mentioned obesity as an impairment that would affect plaintiff's ability to work (R. at 8-10).

Plaintiff has failed to point to any evidence in the record indicating that plaintiff's obesity resulted in limitations not included in the ALJ's RFC findings, or that plaintiff's obesity meets or equals a listed impairment.  See Arles v. Astrue, 438 Fed. Appx. 735, 740 (10th Cir. Sept. 28, 2011); Warner v. Astrue, 338 Fed. Appx. 748, 751 (10th Cir. July 16, 2009).  For these reasons, the court finds no error by the ALJ in her consideration of plaintiff's obesity.

**IV.  Did the ALJ err in her analysis of the medical opinion evidence regarding plaintiff's mental limitations?**

On June 3, 2014, plaintiff's mental health treatment providers provided a mental RFC report opining that plaintiff had marked limitations in 3 categories, and moderate limitations in 16 other categories (R. at 1017-1021).  The ALJ noted that at the time the form was completed, plaintiff's mental health treatment providers had treated plaintiff for little over a month, the treatment notes are largely comprised of plaintiff's subjective complaints, and many of the mental status observations were relatively unremarkable, other than plaintiff's extensive complaints and reported delusions.  The ALJ finally noted plaintiff's daily activities, and concluded

9

that the opinions of the treatment providers were unpersuasive (R. at 37). The ALJ also provided an extensive discussion of plaintiff's mental health allegations and treatment, noting that her condition was improving with treatment, and that she was going to Wyoming to work on a horse ranch with disabled children (R. at 35-36).

The record also contains a consultative psychological evaluation from Dr. Neufeld, dated May 13, 2013. Dr. Neufeld, after reviewing the record and conducting a mental status examination of the plaintiff, found that her condition would not entirely preclude her ability to adequately understand, remember and carry out at least simple instructions, sustain concentration, persistence and pace in a work setting, or maintain at least minimally appropriate social interactions with coworkers, supervisors, and the general public. Dr. Neufeld also stated that plaintiff's ability to maintain adequate performance over the course of typical 40 hour work week without any additional relief from psychological distress remained somewhat questionable (R. at 601-605). The ALJ concluded that Dr. Neufeld's findings were consistent with the relatively unremarkable mental status findings by plaintiff's health care providers, and found that Dr. Neufeld's opinions were persuasive (R. at 35).

Finally, the record contains a state agency assessment by Dr. Cohen, who on May 20, 2013, after a review of the record, including the evaluation by Dr. Neufeld, set forth her opinions regarding plaintiff's mental limitations. Her conclusions were as follows:

> The claimant's abilities are estimated as falling in the low average to borderline ranges. She can understand and remember simple to intermediate level directions but may have difficulty with more complex verbal material.
>
> The claimant appears to have some limitations in attention and concentration, possibly secondary to pain. She is able to attend long enough to complete simple tasks but would have difficulty with more complex work or work requiring sustained concentration over long periods of time.
>
> The claimant reports low mood and some irritability associated with her level of pain. This would likely interfere with her ability to work effectively with the public, although she should be able to maintain at least superficially appropriate relationships with coworkers and supervisors.
>
> At present time her impairments are causing moderate limitations in terms of her ability to concentrate and persist, and mild limitations in social functioning. The opinion from Dr. Neufeld that these may limit but not preclude work is given great weight as it is consistent with the other evidence in the file.

(R. at 171-172, 176-178). The ALJ gave great weight to these opinions, finding that they are supported by the evidence and

11

explained with rationale that is reasonably based in the evidence of record (R. at 37).

In her mental RFC findings, the ALJ found that plaintiff can perform simple and routine tasks involving well-defined tasks with little or no independent planning or goal setting and involving no more than occasional, superficial interaction with the general public and coworkers.  She would do best working with things and data rather than with people (R. at 33).  Thus, the ALJ's mental RFC findings appear to generally reflect the opinions of Dr. Cohen and Dr. Neufeld.

Plaintiff argues that the ALJ erred by discounting the opinions from the treatment providers.  The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the

12

other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as

adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The court finds no clear error in the ALJ's analysis of the medical opinion evidence regarding plaintiff's mental limitations, and in the ALJ's determination to accord greater weight to the opinions of Dr. Neufeld and Dr. Cohen (who gave great weight to the opinions of Dr. Neufeld).  The court will not reweigh the medical evidence regarding plaintiff's RFC.  The conclusions of the ALJ regarding the relative weight accorded to the medical opinion evidence are reasonable, and the ALJ's RFC findings are supported by substantial evidence.  The ALJ did not need to explicitly discuss all of the § 404.1527 factors for each of the medical opinions.  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).  It is sufficient if the ALJ provided good reasons in her decision for the weight she gave to the treating source opinions.  Nothing more is required.  Id.  The court finds that the ALJ in this case provided good reasons in her decision for the weight she gave to the treating source opinions.  The court finds that the balance of the ALJ's

analysis of the medical opinion evidence is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

**V.  Did the ALJ err in her credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need

not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The ALJ extensively discussed plaintiff's physical and mental impairments, her credibility, 3rd party statements, the medical treatment records, and the medical opinions (R. at 33-37). The court finds no clear error in the ALJ's credibility analysis, and the court will not reweigh the evidence. The court finds that the balance of the ALJ's credibility analysis is supported by substantial evidence. See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 13th day of September 2016, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge